**In the United States District Court**
**For the Southern District of Texas**
**Houston Division**

| | | |
|---|---|---|
| **ELUSIVE WILDLIFE** | § | |
| **TECHNOLOGIES, LP,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. _____** |
| | § | |
| **ALLPREDATORCALLS.COM, INC.,** | § | |
| **and ANDREW PAUL JONES,** | § | |
| | § | |
| *Defendants.* | § | |

---

**Plaintiff's Complaint and Application for Temporary Injunction, Permanent Injunction, and Declaratory Action**

---

**TO THE HONORABLE JUDGE OF THIS COURT:**

Comes Now, Elusive Wildlife Technologies, LP, Plaintiff in the above-styled and numbered cause, and files this, their Original Complaint, Application for Temporary Injunction and Permanent Injunction, and Declaratory Action and if allowed would respectfully say and show this Honorable Court the following:

**I.**
**NATURE OF THE ACTION**

1.     This is an action for violations of Sections 32 and 43 of the Lanham Act, for false designation and origin and false descriptions and representations in interstate commerce; dilution of trademark under Section 43 of the Lanham Act.  15 U.S.C. §§ 1114 and 1125.

2.     Plaintiffs also bring causes of action for: common law infringement, unfair competition, common law unfair competition, tortious interference with contract, exemplary damages and

seeks attorneys' fees and litigation costs in connection with the same.

3.      Plaintiff further seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, declaring United States Patent Nos. 9,951,928 (the "'928 Patent"), and 10,208,924 (the "'924 Patent") (collectively the "Patents") to be not infringed and to be invalid.  *See* Exhibit 3, the '928 Patent; and Exhibit 4, the '924 Patent.

4.      Plaintiff further requests this Honorable Court grant its Application for a Temporary Injunction and Permanent Injunction, as well as requested Declaration Action as indicated below.

## II.
### PARTIES

5.      Plaintiff Elusive Wildlife Technologies, LP, is a Texas business organization that does business within the State of Texas.  Plaintiff may be reached in care of counsel, Stacey L. Barnes, Kearney, McWilliams & Davis, PLLC, 410 Pierce Street, Suite 241, Houston, Texas 77002.

6.      Defendant ALLPREDATORCALLS.COM, Inc., ("ALLPREDATOR") is a Utah for-profit corporation engaged in the business of manufacturing certain products which infringe upon Plaintiff's trademarks and trade dress and unfairly compete with Plaintiff's commercial products.  Defendant ALLPREDATORCALLS.COM, Inc. conducts business throughout the United States and has conducted business within the Southern District of Texas.  Defendant ALLPREDATORCALLS.COM, Inc. may be served with process through its agent of service, Andrew Paul Jones, at his principal place of business, 1772 S. Summerfield Lane, Washington, Utah 84780.

7.     Defendant Andrew Paul Jones ("Jones") is an individual and resident of the State of Utah engaged in the business of manufacturing, or causing to be manufactured, certain products which infringe upon Plaintiff's trademarks and trade dress and unfairly compete with Plaintiff's commercial products.  Defendant Andrew Paul Jones may be served at his last known address of 1772 S. Summerfield Lane, Washington, Utah 84780.  Defendant Andrew Paul Jones conducts business through Defendant ALLPREDATORCALLS.COM, Inc. throughout the United States and has conducted business within the Southern District of Texas.

## III.
### JURISDICTION AND VENUE

8.     This Court has original jurisdiction over this matter pursuant to the Trademark Act of 1946, 15 U.S.C. 1051, *et seq*., and 28 U.S.C. 1338(a) because this claim arises under an Act of Congress relating to trademarks and unfair competition.

9.     This action also arises under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., which are within the subject matter jurisdiction of this Court under 28 U.S.C. §§ 1331 and 1338(a).

10.     Jurisdiction is also proper in this matter under 28 U.S.C. §§ 1331, 1332(a), 1338(a) and (b).  Venue is proper pursuant to 28 U.S.C. §§1391(b) and (c) in that all parties are residents of, or transact business in, the Southern District of Texas.

11.     A substantial part of the events giving rise to the claims involved in this lawsuit occurred in Houston, Texas.  The trademark intellectual property at issue is located in, and owned by entities headquartered in, Conroe, Texas.  Defendant has shipped all relevant products, or has arranged to ship its products, into the Southern District of Texas. Defendants have advertised

their products for sale within the Southern District of Texas

## IV.
### FACTUAL BACKGROUND

10.    Plaintiff is a widely-known manufacturer and distributor of outdoor and recreational hunting products, specifically including a series of illumination devices designed to aid Plaintiff's customers in their recreational hunting expeditions.   The specific product of Plaintiff's which comprises the basis of this suit is known as "The Kill Light."  The Kill Light is a highly powerful and specialized illumination device which allows for a considerably extended range of illumination and the ability for the user of the Kill Light to switch between different colors of illumination.

11.    Plaintiff has been in continuous operation in the industry of outdoor and recreational hunting products since the year 2003.  In that time, Plaintiff has become incredibly well-known among the recreational outdoors and hunting communities both nationally and internationally. Plaintiff's Kill Light, as well as several other products of Plaintiff, has been exceptionally well-received by these communities and has gained significant recognition among the general public, comprising hundreds of thousands of consumers.  The success of Plaintiff's products is a result of the uncompromising quality and continued development and marketing of Plaintiff's brand tirelessly undertaken by Plaintiff.

12.    The relationship between Plaintiff and Defendant Jones began several years before the initiation of this lawsuit.  For several years, Defendant Jones was a distributor of Plaintiff, selling and distributing Plaintiff's products, including the Kill Light, to Plaintiff's thousands of customers.  Plaintiff's Kill Light proved to be such a successful and sought-after product among

consumers that the demand for same became such that Plaintiff often struggled to meet this demand.  On several occasions, Defendant Jones, while a distributor for Plaintiff, complained to Plaintiff of the need for increased production of Plaintiff's Kill Light product in order to meet the ever-increasing demand of Plaintiff's consumers.  Despite Plaintiff's best efforts, Plaintiff was not always able to meet this demand, but continuously manufactured and distributed its Kill Light and other products at Plaintiff's maximum capacity.

13.    Despite Plaintiff's continued efforts to increase production of Plaintiff's Kill Light product, as well as Plaintiff's eventual achievement of such increased production, Defendant Jones terminated his relationship with Plaintiff as a distributor of Plaintiff's Kill Light product. Subsequently, Defendant Jones caused to be manufactured a similar illumination device to Plaintiff's Kill Light product, known as the "Wicked Light," and began selling and distributing Defendant Jones's Wicked Light product through Defendant ALLPREDATORCALLS.COM, INC., Defendant Jones's for-profit corporation.

14.    Defendants' Wicked Light product incorporates several unique aspects of Plaintiff's Kill Light product, including its appearance, size, and features.  As Defendant Jones became acutely familiar and intimated with all aspects of Plaintiff's Kill Light product through his time as one of Plaintiff's distributors, it comes as little surprise to Plaintiff that Defendants' Wicked Light product as wrongfully copied so many characteristics of Plaintiff's Kill Light product.  Further, Defendant Jones's time as a distributor for Plaintiff also allowed Defendant Jones an intimate insight into the preferences and buying points of Plaintiff's customers.  As a result, Plaintiff is also not surprised at Defendants' unlawful attempts to unfairly market Defendants' infringing

Wicked Light product to Plaintiff's consumers.

15.     Plaintiff enjoys tremendous success, widespread visibility, and goodwill throughout the United States and other countries.  The evidence of the existence of this secondary meaning through promotion and use includes, without limitation: the popularity and wide recognition of Plaintiff's Kill Light and other product by various media outlets, and the numerous positive endorsements of Plaintiff's Kill Light product.  Through these and other points of exposure, the public has come to recognize and to trust Plaintiff's Kill Light product.

16.     Plaintiff has invested, and continues to invest, significant sums to build and maintain the quality and the image of its products.  Plaintiff has declined numerous offers that, while potentially very lucrative, are inconsistent with the long-term value of its federally registered trademarks.  It is this investment in its trademarks and trade dress, along with Plaintiff's willingness to forego opportunities inconsistent with the image of its products and dogged insistence on producing the highest quality product, that are the critical elements of Plaintiff's success.  This success is demonstrated by the dramatic and consistent increase in sales of Plaintiff's Kill Light and other products.

17.     Plaintiff has used the common law, and later federally registered, trademark KILL LIGHT, and associated trade dress since 2003.  The appearance of the trademarks and trade dress are inherently distinctive and serve to identify Plaintiff as the source of the goods bearing the trademarks.  In fact, Plaintiff's Kill Light product has become a colloquial term used for lights of the type exhibited by Plaintiff's Kill Light product.  Plaintiff obtained the federally registered trademark KILL LIGHT, Registration No. 4,460,396, from the United States Patent

and Trademark Office on January 7, 2014.  Plaintiff is the owner and exclusive licensee of the Trademarks.

18.     As previously alluded to, Defendants remain in the business of manufacturing and selling certain illumination devices to the public.  One of Defendants' most popular products is the aforementioned Wicked Light product.  Defendants have previously falsely claimed, and falsely believe, that Plaintiff's Kill Light product infringes upon Defendants' Wicked Light product.  In an attempt to dispel Defendants' spurious claims that Plaintiff's Kill Light product somehow copies Defendants' Wicked Light product, Plaintiff procured one of Defendants' Wicked Light products and had it shipped to an address within the Southern District of Texas.  Defendants Wicked Light product incorporates several protected aspects of Plaintiff's Kill Light product, as well as several aspects of Plaintiff's trade dress associated with same, thereby infringing upon Plaintiff's Kill Light product.  As alleged, Plaintiff has not licensed the manufacture (other than for its own use or the use of its authorized distributors) the distribution of the goods bearing its trademarks or trade dress to any third-party.  By copying several aspects of Plaintiff's Kill Light product, especially after having secured proprietary knowledge of Plaintiff's products and consumer lists, Defendants' actions blatantly infringe upon Plaintiff's Kill Light product.

19.     Defendants' Wicked Light product is, and was meant to be, a copy and counterfeit of Plaintiff's Kill Light product.  Defendants are engaged in infringing activities, including manufacturing, purchasing, distributing, and selling an infringing product that bears the likeness and function of Plaintiff's Kill Light product.  In fact, Plaintiff has been inundated with a series

of customer complaints due to Plaintiff's customers purchasing Defendants' infringing Wicked Light product while believing it to be Plaintiff's Kill Light product.

20.     Defendants are aware that their unauthorized use of Plaintiff's Kill Light product trade dress and consumer information would result in benefit to Defendants and intentionally selected a confusingly similar designation for their infringing product.  Defendants are engaged in infringing activities, including manufacturing, purchasing, distributing and selling the Wicked Light product that bears the likenesss and image of Plaintiff's Kill Light product.

21.     One of Plaintiff's very popular products was a two-light kit called the "Hog and Dog Kit."  The kit featured one red XLR 250 Kill Light product and one green XLR 250 Kill Light product, with the associated mounts, batteries, charger, and switches. As stated at length in Plaintiff's marketing material and website, the green light was for use on wild or feral hogs, and the red light was for use with regard to predator animals, mostly coyotes, hence the name "Hog & Dog."  Defendants immediately designed a logo featuring a green hog and a red dog. Defendants advertised and sold, and still advertise and sell, their products, using a green hog and a red dog logo.

22.     In addition, Plaintiff recently began selling its products in a larger box, a military grade case with interior foam cutouts for the lights and accessories.  Plaintiff began demonstrating the new box at trade shows to dealers.  Almost immediately Defendants copied the look and feel of Plaintiff's product, incorporating the same box size, shape, appearance, and the interior foam cutouts.

23.     Further, Defendants have deliberately engaged in a campaign of disparagement and

confusion regarding their product and Plaintiff's Kill Light product.  Defendants published a YouTube video about Plaintiff's Kill Light XLR 250 product. The video noted that "the XLR 250 is obsolete and has been discontinued."  The video further stated that Plaintiff's product had been replaced by the Defendants' W400 product. Plaintiff received many phone calls from customers asking why they had discontinued the XLR 250 and wanting to purchase the W400. The YouTube video that Defendants produced and published eventually reached and was viewed by hundreds of thousands of people. The allegations and misrepresentation in the video were false and deliberately misleading to consumers.

24.    Defendants purchased Google AdWords advertisements using Plaintiff's registered KILL LIGHT trademark, company name, and product names.  The advertisements in question directed customers who were searching for Plaintiff's products to Defendants' video about the Kill Light that stated that it had been discontinued and had been replaced by Defendants' product. Defendants' intent was to deliberately mislead customers and trade off Plaintiff's goodwill. A number of Plaintiff's customers noted that they had typed "Kill Light" into a Google search and the first result appeared to be designated as "Elusive Wildlife Tech." However, once a customer clicked on that first result, the link directed the customer to the allpredatorcalls.com website, where they mistakenly purchased a Wicked Light product from Defendants that they thought had been made by Elusive Wildlife.

25.    Defendants' conduct is likely to, and intended to, cause confusion, cause mistake, or deceive consumers as to the source, affiliation, sponsorship, license, and origin of the Wicked Light product made, distributed, and sold by Defendants.  In fact, Defendants' activities have

caused actual confusion among Plaintiff's consumers as to the source and origin of Defendants' Wicked Light product. More specifically, but without limitation, Plaintiff's customers, as well as third-parties, have contacted Plaintiff concerning Defendants' infringing Wicked Light product because of the similarity in the likeness and trade dress to Plaintiff's Kill Light product used by Defendants. Defendants' actions nullify Plaintiff's right to the exclusive use of its trademarks and trade dress, free from infringement. Defendants' activities have had and will continue to have a substantial, adverse effect on Plaintiff's existing and projected future interstate business or marketing products and services identified by its registered trademarks and trade dress, and the goodwill of Plaintiff's business connected with the use of, and symbolized by, Plaintiff's protected Kill Light product. Finally, and upon information and belief, Defendants are selling their Wicked Light product with the specific designed to siphon off sales from Plaintiff.

26.     After Plaintiff perfected a product that allowed a user to switch between green, red, and white lights, by means of a rotary switch or knob, Defendants designed a similar product. Plaintiff's product switched between colored lights mounted on a linear element that translated back and forth, by means of a cam operation. Defendants' product featured lights mounted on a two dimensional plain, which rotated. Defendants obtained a patent covering their product, United States Patent No. 9,951,928 (the "'928 Patent"). Defendants then filed for and obtained a continuation patent, United States Patent No. 10,208,924 (the "'924 Patent"). *See* Exhibit 3, the '928 Patent; and Exhibit 4, the '924 Patent.

27.     After Defendants' continuing display of brazen of intellectual property infringement,

Defendants astoundingly demanded that Plaintiff cease and desist manufacturing and selling its product.  *See* Exhibit 1, Defendants' Cease & Desist Letter of March 22, 2019.  Plaintiff responded that its products do not infringe Defendants' Patents, and in fact contain a radically dissimilar light switching mechanism than those described in Defendants' Patents.  *See* Exhibit 2, Plaintiff's Response Letter of April 26, 2019.

## V.
### CAUSES OF ACTION

### A.    Count One: Trademark Infringement

28.    Plaintiff re-alleges the allegations contained in previous Paragraphs of this Complaint by reference as if set forth verbatim herein and requests relief from this Court for trademark infringement.  Plaintiff brings this action against all Defendants.

29.    Plaintiffs' claims arise from Sections 32 and 43 of the Lanham Act for infringement of registered and unregistered trademarks and trade dress.  15 U.S.C. §§1114 and 1125.  This claim is asserted against all named Defendants.

30.    Defendants have intentionally and knowingly copied Plaintiff's distinctive "Kill Light" trademark and associated trade dress with Plaintiff's Kill Light product through the purchase and dissemination of certain internet advertisements for Defendants' Wicked Light product triggered by Plaintiff's internet consumers by searching for the keywords contained in Plaintiff's trademark.  Said intentional and wrongful conduct occurred in the course of Defendants' commercial and advertising activities.

31.    Defendants' implemented an unlawful advertising campaign by purchasing certain advertising words, specifically Plaintiff's "Kill Light" product name and trademark, which

caused Plaintiff's consumers who were searching for Plaintiff's Kill Light product through the internet to be redirected to Defendants' website and advertisements for Defendants' Wicked Light product.  Thus, any consumer searching for Plaintiff's Kill Light product was wrongfully redirected to Defendants' advertisement for Defendants' Wicked Light product.  Further, through this unlawful misdirection, Defendants' advertised and represented to Plaintiff's consumers that Defendants' Wicked Light product was the successor product to Plaintiff's alleged discontinued Kill Light product.  At all times during Defendants' wrongful use of this unlawful advertising and infringement scheme, Plaintiff's Kill Light had not, in fact, been discontinued, was not in any way related or associated with Defendants' infringing Wicked Light product and was not authorized or licensed to Defendants' for any use whatsoever.

32.    Given the great similarities Defendants took from Plaintiff's Kill Light product and incorporated into Defendants' Wicked Light product, Plaintiff contends Defendants intended for Defendants' Wicked Light product to be "passed off" as Plaintiff's Kill Light product.  The unauthorized use of Plaintiff's "Kill Light" trademark falsely indicated to consumers that Defendants' Wicked Light product originated from, or was approved, sponsored or licensed by, or affiliated with Plaintiff and/or Plaintiff's Kill Light product and trademark when it is not.

33.    Plaintiff has not licensed the manufacture or distribution of its Kill Light product or Plaintiff's trademarks to Defendants.  Plaintiff's Kill Light product is sold over the internet and in certain other retail outlets.  Defendants' infringing Wicked Light product is likewise sold over the internet, and, on information and belief, in unauthorized retail outlets.  Defendants' Wicked Light product is thus presented to consumers through the same or similar channels in which

Plaintiff's legitimate Kill Light product is sold.

34.     Without permission, license, or other authority from Plaintiff, Defendants infringed upon Plaintiff's "Kill Light' trademark in order to undertake Defendants' wrongful advertising campaign and facilitate the purchase and distribution Defendants' Wicked Light product by Plaintiff's consumers in violation of Plaintiff's trademarks within this district and throughout the United States.

35.     Prior to the acts complained of herein:

(i)     Plaintiff marketed Plaintiff's Kill Light product with Plaintiff's "Kill Light" trademark for several years;

(ii)    Plaintiff expended, and continues to expend, large sums of money to build, maintain, and extend Plaintiff's reputation, especially with regard to Plaintiff's Kill Light product and trademark;

(iii)   Plaintiff engaged, and continues to engage, in interstate activities designed to promote Plaintiff's Kill Light product and the goodwill associated with same, as well as Plaintiff's registered trademark;

(iv)    Plaintiff engaged, and continues to engage, in interstate activities designed to promote the business and goodwill identified by Plaintiff's Kill Light and registered trademark and trade dress in interstate commerce, and to expand the use and reputation of Plaintiff's trademark, trade dress, and property throughout the United States;

(v)     Plaintiff's registered trademark and trade dress have been, and continue to be,

known in numerous states as marks identifying and distinguishing Plaintiff's Kill

Light product; and,

(vi)     Plaintiff's trademark and trade dress relating to Plaintiff's Kill Light product are

inherently distinctive, and have been, and continue to be, known throughout the

United States as identifying and distinguishing the business of Plaintiff.

36.     Defendants' conduct is likely to cause confusion, cause mistake, or deceive as to the

source and origin of the Wicked Light product made, distributed, and sold by Defendants. Such

confusion, mistake, or deception occurred in the course of Defendants' commercial and

advertising activities.   In fact, Defendant's activities have caused actual confusion with

consumers as to the source and origin of such products.   More specifically, but without

limitation, Plaintiff's customers, as well as third-parties, have mistakenly contacted Plaintiff

concerning Defendants' infringing Wicked Light product because of the nearly identical

likenesses, Defendants' wrongfully infringing advertising scheme, and similar trade dress, as

well as the deliberate passing off by Defendants.  Defendants' acts nullify Plaintiff's right to the

exclusive use of Plaintiff's trademark and trade dress, free from infringement.

37.     Defendants' activities have had, and will continue to have, a substantial, adverse effect

on Plaintiff's existing and projected future interstate business of marketing products and

services identified by Plaintiff's registered trademark and trade dress, and the goodwill of

Plaintiff's business connected with the use of, and symbolized by, Plaintiff's federally registered

"Kill Light" trademark and trade dress associated with Plaintiff's Kill Light product.

38.     Defendants' activities and conduct constitute infringement of Plaintiff's registered and

common law trademark in violation of Sections 32 and 43 of the Lanham Act.  15 U.S.C. §§
1114 and 1125.

39.     Plaintiff has been, and continues to be, damaged by Defendants' activities and conduct.
Defendant has profited thereby and unless Defendants' conduct is enjoined, Plaintiff's goodwill
and reputation will continue to suffer irreparable injury that cannot be adequately calculated or
compensated solely by money damages. Accordingly, Plaintiff seeks preliminary and permanent
injunctive relief pursuant to 15 U.S.C. § 1116.

40.     Defendants have intentionally and knowingly used Plaintiff's trade dress and trademark
and, accordingly, Plaintiff is entitled to a judgment of three (3) times its damages or Defendants'
profits, together with reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) and (b).

### B.     Count Two: Trademark Dilution

41.     Plaintiff re-alleges the allegations contained in the preceding Paragraphs of this
Complaint by reference as if set forth verbatim herein and requests relief from the Court for
Trademark Dilution under Section 43(c) of the Lanham Act.  15. U.S.C. §1125(c).  Plaintiff
brings this action against all Defendants.

42.     As a result of Plaintiff's continuous promotion of Plaintiff's Kill Light product, and
Plaintiff's associated intellectual property, Plaintiff's Kill Light product has become recognized
as a distinctive trademark.  Defendants' use in commerce of the deliberately misleading Wicked
Light product began after Plaintiff's had spent years investing and strengthening Plaintiff's "Kill
Light" trademark and Plaintiff's Kill Light product, and Defendant's deceptive Wicked Light
product has caused dilution of the distinctive quality of Plaintiff's Kill Light product and

trademark through Defendants' wrongful commercial and advertising activities.  Such conduct has caused injury to Plaintiff pursuant to 15 U.S.C. § 1125(c).

43.     Defendants willfully intended to trade on Plaintiff's reputation and/or to cause dilution of Plaintiff's "Kill Light" trademark.  Accordingly, Plaintiff is entitled to recover its damages, as well as Defendants' profits received as a result of the infringement, pursuant to 15 U.S.C. § 1117(a).

44.     Unless Defendants' conduct is enjoined, Plaintiff, including Plaintiff's goodwill and reputation, and significant value of Plaintiff's "Kill Light" trademark, will suffer irreparable injury that cannot be adequately calculated or compensated solely by money damages. Accordingly, Plaintiff seeks preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116 and 15 U.S.C. § 1125(c)(1) against Defendants.

### C.     Count Three: Trade Dress Infringement

45.     Plaintiff re-alleges the allegations contained in the preceding Paragraphs of this Complaint by reference as if set forth verbatim herein and seeks relief from this Court for Trade Dress Infringement.  Plaintiff brings this action against all Defendants.

46.     Plaintiff's Kill Light product associated with the federally registered KILL LIGHT trademark is a widely-known product amongst domestic and foreign consumers.  Plaintiff's Kill Light illumination product features a distinctive black steel appearance, as well as unique and functional features, including: a telescoping lens and the ability to alternate between different color lights.

47.     Plaintiff's trade dress also includes the look and feel of the product, the association with

its hunting videos, the product's packaging, including the military style case, box size, shape, and appearance, and the interior foam cutouts, as well as the association with a green hog and a red dog.

48.    Since introducing the trade dress associated with Plaintiff's Kill Light product, Plaintiff has spent thousands of dollars promoting Plaintiff's Kill Light product and its appearance and function.  As a result of Plaintiff's continuous and exclusive use of the trade dress associated with Plaintiff's Kill Light product throughout the United States, and the world, in connection with Plaintiff's Kill Light product, Plaintiff's Kill Light trade dress enjoys wide public acceptance and association with Plaintiff, and has come to be recognized widely and favorably by the public as an indicator of the origin of Plaintiff's products.  As a result of Plaintiff's extensive use and promotion of Plaintiff's Kill Light trade dress, Plaintiff has built up and now owns valuable goodwill that is symbolized by Plaintiff's Kill Light trade dress.  The purchasing public has come to associate Plaintiff's Kill Light trade dress with Plaintiff.

49.    Defendants have sold, distributed, advertised, and offered for sale a product with an intentional and confusingly similar label and trade dress, i.e. Defendants' Wicked Light product, and as a result Defendants have ensured the likelihood of customer confusion.  The trade dress used by Defendants in conjunction with Defendants' Wicked Light product contains nearly all the elements contained within Plaintiff's Kill Light trade dress.  Defendants' use of knockoff duplicates or confusingly similar imitations of Plaintiff's Kill Light trade dress has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' Wicked Light product is manufactured or distributed by Plaintiff,

or are affiliated, connected, or associated with Plaintiff, or has the sponsorship, endorsement, or approval of Plaintiff, which it does not.

50.     Defendants have made false representations, false descriptions, and false designations of origin of its goods in violation of 15 U.S.C. § 1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by Plaintiff's Kill Light trade dress, for which Plaintiff has no adequate remedy at law.

51.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's Kill Light trade dress to the great and irreparable injury of Plaintiff.   Defendants' conduct has caused, and is likely to continue causing, substantial injury to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

### D.     Count Four: Lanham Act Unfair Competition

52.     Plaintiff reasserts the allegations contained in the preceding sections of this Complaint by reference as if set forth verbatim herein and request relief from this Court for Defendants' for trademark infringement pursuant to 15 U.S.C.§1125(a).   Defendants' actions, as set forth above, constitute unfair competition in violation of the Lanham Act.   15 U.S.C. §1125(a).   Plaintiff brings this action against all Defendants.

53.     Plaintiff is the owner of "Kill Light," a federally registered trademark associated with

Plaintiff's Kill Light product that Defendants have infringed upon and continue to infringe upon. Plaintiff's trademark is inherently distinctive.  Plaintiff's Kill Light product and trademark has gained substantial secondary meaning in commerce amongst Plaintiff's consumers and the general public.

54.     Through its own commercial and internet sales, Defendants' are infringing upon Plaintiff's federally registered trademark in commerce without the authorization of Plaintiff in a way that has caused consumer confusion as to Defendants' association or affiliation with Plaintiff's Kill Light product.  This is especially true given the history between Defendant Jones and Plaintiff.  Defendants, through Defendant Jones's prior engagement with Plaintiff, had uninhibited access to Plaintiff's Kill Light product and Plaintiff's consumers.  Defendants' were able to create an infringing product and advertise it to Plaintiff's consumers while diverting business away from, and discrediting, Plaintiff's Kill Light product and trademark.  These actions constitute unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).

55.     Such actions were intended to cause confusion, have caused confusion, and will continue to cause confusion unless enjoined.  For each act of unfair competition, Plaintiff is entitled to recover its actual damages as well as Defendants' profits from such infringement.  Defendants' acts have directly caused, and will continue to directly cause harm, to Plaintiff.

56.     Monetary relief alone is not adequate to fully address the irreparable injury that Defendants' illegal actions have caused and will continue to cause Plaintiff if not enjoined. Plaintiff is therefore also entitled to preliminary and permanent injunctive relief to stop Defendants' ongoing unfair competition.

### E.      Count Five: Request for Declaratory Relief

57.     Plaintiff seeks a declaratory judgment that it has full rights in and to Plaintiff's Kill Light

product and trademark, pursuant to Tex. Civ. Prac. & Rem. Code §§ 37.001, *et seq.*; Fed. R.

Civ. P. 57; and 28 U.S.C. §§ 2201, 2202.   Pursuant to said request, Plaintiff re-alleges all

allegations contained within the preceding Paragraphs of this Complaint and incorporate the

same by reference as if set forth verbatim herein.   Plaintiff brings this action against all

Defendants.

58.     Defendants have represented to Plaintiff's consumers that Defendants, rather than

Plaintiff, hold the rights to Plaintiff's Kill Light product and trademark, and have made threats

of affirmative legal action to Plaintiff in a wrongful attempt to adversely affect Plaintiff's right

and ability to continue to market Plaintiff's Kill Light product.   An actual and justiciable

controversy exists as to whether Plaintiff has full rights in Plaintiff's own Kill Light product.

This lawsuit is preventative in nature and intended to ascertain the rights of parties when

controversy has arisen prior to commission of any wrong.

59.     Plaintiff requests the Court to declare rights, status, and legal relations between the

parties with regard to Plaintiff's rights in Plaintiff's Kill Light product.   Such a declaration will

resolve the pending controversy and is appropriate in this instance.   Plaintiff thus seeks a

declaratory judgment that: (a) Plaintiff has full rights in its own Kill Light product and

trademark; (b) Defendants' representations that Defendants, rather than Plaintiff, hold the right,

or has superior rights, to Plaintiff's Kill Light product is baseless, unfounded, and wholly

untrue; (c) Defendants' conduct infringes upon Plaintiff's Kill Light product and trademark and

trade dress in violation of the Lanham Act; (d) that said violations are causing Plaintiff to suffer immediate and unquantifiable harm, including confusion and dilution of Plaintiff's trademarks and trade dress; and (e) that Defendants' actions were willful and intended to cause confusion, have caused confusion and will continue to cause confusion unless enjoined.

### F.     Count Six: Common Law Unfair Competition

60.    Plaintiff reasserts the allegations contained in the preceding Paragraphs of this Complaint by reference as if set forth fully herein and respectfully requests this Honorable Court provide relief for Plaintiffs for Defendants' unfair competition pursuant to the common laws of the State of Texas.  Plaintiff brings this cause of action against all Defendants.

61.    Defendants' actions, as set forth above, constitute unfair competition, the natural and probable consequence of which has been, and will continue to be, that the public is confused, misled, and deceived by the similarity of Defendants' Wicked Light product to Plaintiff's Kill Light product, and that such persons who are seeking Plaintiff's products will be mistakenly led by that similarity to purchase Defendants' products.  This is especially true considering Defendants' unlawful actions of diverting all of Plaintiff's internet consumers to Defendants' products, website, and false advertisements.  Defendants' actions are tortuous and unlawful and are designed to secure a commercial competitive advantage.  Defendants' actions are contrary to honest and lawful practice in commercial matters.

62.    Defendants' adoption and use of Plaintiff's Kill Light product, trademark, and trade dress was and is an attempt to create the impression with the public that Defendants' activities and sales are sponsored by or affiliated with Plaintiff.  Defendants have engaged in acts of unfair

competition by intentionally failing to inform Plaintiff's customers of the difference in the source of Defendants' Wicked Light product compared to Plaintiff's Kill Light product, by soliciting customers without distinguishing Defendants from Plaintiff.

63.     Defendants have made multiple fraudulent and untrue statements, and committed tortious acts, in an attempt to interfere with Plaintiff's rightful commercialization of its Kill Light product, trademark, and trade dress.  Defendants' actions were made in an attempt to secure a competitive and commercial advantage over Plaintiff.  Such actions are tortious, wrongful, and illegal.  Defendants' actions are contrary to honest practice in commercial matters.  Defendants' acts have directly caused, and will continue to directly cause harm, to Plaintiff.

64.     Unless Defendants' willful and egregious conduct is enjoined, Plaintiff, as well as Plaintiff's goodwill and reputation, will suffer irreparable injury that cannot be adequately calculated or compensated solely by money damages.  In fact, Defendants' unlawful and infringing conduct has already directly caused Plaintiff harm.  Accordingly, Plaintiff seeks preliminary and permanent injunctive relief, as well as the declaratory action

### G.     Exemplary Damages

65.     The wrongs done by Defendants were aggravated by that kind of fraud, willfulness, wantonness, malice, and gross negligence for which the law allows the imposition of exemplary damages.  The conduct of Defendants was intentional, willful and wanton, was without justification or excuse, and is offensive to any sense of public justice.  Defendants acted with gross indifference to the rights and interests of Plaintiff.  Plaintiff, therefore, seeks punitive or

exemplary damages from Defendants.  An award of exemplary damages will not only deter Defendants from again taking such actions, but also would serve to warn and deter others who might consider such actions in the future.

### H.    Count Seven: Declaratory Judgment of Non-Infringement of the '924 Patent

66.    Elusive incorporates the foregoing paragraphs by reference as though fully set forth herein.

67.    No claim of the '924 Patent has been or is infringed, either directly or indirectly, by Elusive or the purchasers of Elusive's products through their use of Elusive products.

68.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between Elusive and Defendants to warrant the issuance of a declaratory judgment that Elusive has not infringed, and does not infringe, directly or indirectly, any valid claim of the '924 Patent.

### I.    Count Eight: Declaratory Judgment of Invalidity of the '924 Patent

69.    Elusive incorporates the foregoing paragraphs by reference as though set forth fully herein.

70.    The claims of the '924 Patent are invalid for failure to comply with the requirements of patentability as specified in 35 U.S.C. §§ 1 et seq., including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112, and/or based on other judicially-created bases for invalidation.

71.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between Elusive and Defendants to warrant the issuance of a declaratory judgment that the claims of the '924 Patent are invalid.

**J.      Count Nine: Declaratory Judgment of Non-Infringement of the '928 Patent**

72.      Elusive incorporates the foregoing paragraphs by reference as though set forth fully herein.

73.      No claim of the '928 Patent has been or is infringed, either directly or indirectly, by Elusive or the purchasers of Elusive's products through their use of Elusive products.

74.      As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between Defendants and Elusive to warrant the issuance of a declaratory judgment that Elusive has not infringed, and does not infringe, directly or indirectly, any valid claim of the '928 Patent.

**K.      Count Ten: Declaratory Judgment of the Invalidity of the '928 Patent**

75.      Elusive incorporates the foregoing paragraphs by reference as though set forth fully herein.

76.      The claims of the '928 Patent are invalid for failure to comply with the requirements of patentability as specified in 35 U.S.C. §§ 1 et seq., including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112, and/or based on other judicially-created bases for invalidation.

77.      As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between Defendants and Elusive to warrant the issuance of a declaratory judgment that the claims of the '928 Patent are invalid.

**VI.**

**APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION**

78.      As previously discussed, Plaintiff is a manufacturer and distributor of Plaintiff's Kill Light product, an illumination device sold primarily on the internet.   Defendant Jones is a

former distributor of Plaintiff's Kill Light product.  Through Defendant Jones, Defendants have continued to infringe upon Plaintiff's Kill Light product, trademark, and trade dress continually since Defendant Jones's cessation as a distributor for Plaintiff every year during the height of the outdoorsman and hunting seasons to which Plaintiff caters its products.  Defendants accomplishes this infringement through the wrongful diversion of Plaintiff's internet consumers, as previously discussed herein.  Defendants have also manufactured, advertised, distributed, and offered for sale its infringing Wicked Light product to Plaintiff's customer.

79.    Plaintiff became aware that Defendants had begun infringing upon Plaintiff's Kill Light, trademark, and trade dress, through evidence of diverted sales and instances of confusion among Plaintiff's internet consumers caused by Defendants manufacturing, advertising, distributing, and offering for selling their infringing Wicked Light product.  The most significant of these violations at issue is the trademark infringement, which, if not cured, would cause confusion to Plaintiff's ownership of Plaintiff's Kill Light product, trademark, and trade dress and also dilute Plaintiff's trademark and trade dress.  In fact, Defendants have already caused such confusion among the general public and Plaintiff's customers, thereby negatively affecting Plaintiff's goodwill and good business reputation in direct violation of the Lanham Act.  If Defendants' are allowed to continue operating in their current form, Plaintiff will waive many of the trademark laws enacted to protect Plaintiff's original works from competitors and infringers.  Plaintiff has no reason to believe that Defendants will stop its infringing activity, regardless of any potential civil liability for which Defendants may be found liable.

80.    Plaintiff requests this Court issue a Temporary Injunction preventing Defendants from

manufacturing, advertising, distributing, selling, or offering for sale of Defendants' product in conjunction or association with Plaintiff's KILL LIGHT registered trademark, THE WORDS "Kill Light," or any colorable variation thereof. Plaintiff respectfully requests this Court issue a Temporary Injunction to prevent Defendants advertising and selling their products in conjunction with Plaintiff's trade dress, including a stylized green hog and/or red dog. Further, Plaintiff respectfully requests this Court issue a Temporary Injunction to prevent Defendants from contacting or diverting Plaintiff's customers with any advertisements or communications regarding Plaintiff's Kill Light product, or from stating that Plaintiff's product has been discontinued or that Defendants' product is its successor. Plaintiff respectfully requests this Court grant this Temporary Injunction in order to protect Plaintiff's federally registered KILL LIGHT trademark, trade dress, and goodwill, until such time as a trial on the merits may be heard by the Court.

81.     Defendants continued distribution of its infringing Wicked Light product and use of Plaintiff's trademark, goodwill, good business reputation, and trade dress is causing Plaintiff irreparable harm to same. Defendants' infringing Wicked Light product causes confusion of ownership of Plaintiff's Kill Light product, trademark, and trade dress, and enabling Defendants to continue in their current infringing activities dilutes Plaintiff's trademarks. If allowed to continue its infringing activities, Defendants' actions will destroy all of the trademark protection afforded Plaintiff under the law. As noted herein above, this harm is imminent. Plaintiff must be allowed to fiercely protect its intellectual property.

82.     The injury faced by Plaintiff is insurmountable.  The burden of shutting down

Defendants' infringing activities is outweighed by the benefit of protecting Plaintiff's trademark and trade dress.  There is no adequate remedy at law.  Damages at this point cannot be calculated should Plaintiff suffer confusion and dilution of Plaintiff's trademark and trade dress. There is a substantial likelihood of success on the merits of this case.  A review of Plaintiff's Kill Light product, trademark, and trade dress, as well as Defendants' blatantly infringing Wicked Light product, including Defendants' product's associated trade dress, establishes copyright and trademark infringement.

83.     Granting the relief requested would not adversely affect public policy or public interest. *See Davidoff & CIE v. PLD International Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001), stating that in trademark infringement suit, public interest was served when injunction prevented consumer confusion in the marketplace.

84.     While Plaintiff believes that no bond is necessary, upon a finding by this Court that a bond is necessary, Plaintiff will post bond.  In the case the Court finds a bond should be posted, Plaintiff believes the bond should be set at a nominal amount given Defendants egregious and clearly unlawful, infringing activities, as well as the relatively small amount of lost profits.

85.     Plaintiff further requests this Court to set its Application for a Temporary Injunction for a hearing.  After said hearing, Plaintiff requests this Court to issue an injunction against Defendants precluding them from manufacturing, advertising, distribution, or offering for sale Defendants' infringing Wicked Light product.

86.     Plaintiff further requests that this Court set its Application for a Permanent Injunction for a full evidentiary trial on the merits.  After said hearing, Plaintiff requests the Court issue a

Permanent Injunction against Defendants, precluding them from manufacturing, advertising, distribution, or offering for sale Defendants' infringing Wicked Light product.

87.     After a trial on the merits, Plaintiff will prove that Defendants' infringing Wicked Light product is confusingly similar to Plaintiff's Kill Light product, trademark, and trade dress. Further, Plaintiff will also prove that Defendants have no rights or legitimate interests in respect of Plaintiff's trademarks, trade dress, or products, including The Kill Light; and that Defendants' infringing activities have been done in bad faith.  Once these elements are proved, Plaintiff requests this Court to enter an Order to permanently prevent Defendants from ever manufacturing, advertising, distribution, or offering for sale Defendants' infringing Wicked Light product.

## VII.
### ATTORNEY'S FEES

88.     The allegations contained in the preceding Paragraphs of this Complaint are incorporated by reference herein as if set forth verbatim.

89.     The recovery of attorneys' fees for trademark infringement is authorized by the provisions of 15 U.S.C. § 1117 and the Texas Civil Practice and Remedies Code §§ 38.001, *et seq.*

90.     As a result of Defendants' unlawful actions, Plaintiff has been required to obtain legal counsel to bring this suit and is therefore entitled to reasonable attorneys' fees that may be awarded by this Court.

## VIII.
### PRAYER

**WHEREFORE**, Plaintiff Elusive Wildlife Technologies, LP prays for judgment against Defendants as follows:

A.  An award of Plaintiff's damages and lost profits;

B.  An award of exemplary damages;

C.  Plaintiff requests this Court to enter an Order granting preliminary and permanent injunction relief to stop the ongoing infringement of Plaintiff's trademark and trade dress;

D.  A Court decree that Plaintiff is the exclusive owner of Plaintiff's Kill Light product, trademark, and trade dress as identified in the Complaint;

E.  A Court decree that Defendants violated the Lanham Act, 15 U.S.C. § 1125(a), and that Defendants' infringing actions were intended to cause confusion, have caused confusion and will continue to cause confusion unless enjoined.  Plaintiff requests this Court to grant it damages for their actual damages, as well as disgorgement of Defendants' profits from such infringement;

F.  Plaintiff requests this Court to enter an Order granting preliminary and permanent injunctive relief to stop Defendants' ongoing unfair competition;

G.  An Order enjoining Defendants from manufacturing, advertising, distributing, selling, or offering for sale Defendants' infringing Wicked Light product;

H.  An award of damages and profits arising from Defendants' trademark dilution and unfair competition, such damages to be trebled in view of the willfulness of Defendants' acts in

infringing upon Plaintiff's trademark and trade dress and willful and intentional selling of Defendants' infringing Wicked Light product;

I.  A Court decree that Defendants willfully intended to trade on Plaintiff's reputation and/or to cause dilution of Plaintiff's trademark and trade dress. Plaintiff requests this Court to award it damages, as well as Defendants' profits received as a result of the infringement, pursuant to 15 U.S.C. § 1117(a);

J.  A Court decree granting preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116 and 15 U.S.C. § 1125 (c)(1) against Defendants;

K.  A court decree that Defendants violated the Texas Business and Commerce Code by means of unfair competition under the Texas common law by intentionally failing to inform Plaintiff's customers of the difference in the source of the products and by soliciting Plaintiff's customers, through nefarious and deceptive practices and acts, without distinguishing Defendants' products from those of Plaintiff.  Accordingly, Plaintiff requests this Court to award it monetary damages, as well as preliminary and permanent injunctive relief;

L.  A declaratory judgment that: (i) Plaintiff has full rights in Plaintiff's own Kill Light product; (ii) Defendants' representations that Defendants, rather than Plaintiff, hold the right to Plaintiff's Kill Light product is baseless, unfounded, and wholly untrue; (iii) Defendants' conduct infringes upon Plaintiff's Kill Light trademark and trade dress in violation of the Lanham Act; (iv) that said violations are causing Plaintiff to suffer immediate and unquantifiable harm, including confusion and dilution of Plaintiff's KILL

LIGHT trademark and associated trade dress; and (v) that Defendants' actions were willful and intended to cause confusion, have caused confusion and will continue to cause confusion unless enjoined;

M. A declaratory judgment that Plaintiff does not infringe the Patents;

N. A declaratory judgment that the Patents are invalid;

O. An award of costs in this suit;

P. An award of attorneys' fees and expenses incurred in connection with this action;

Q. Pre- and post-judgment interest; and,

R. All such other and further relief, either at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully Submitted,

_/s/Stacey L. Barnes_
Stacey L. Barnes
SBN: 24006800
sbarnes@kmd.law
Bradley A. Nevills
SBN: 1852126
bnevills@kmd.law
Kearney, McWilliams & Davis, PLLC
410 Pierce Street, Ste. 241
Houston, Texas 77002
Tel: (713) 936-9620
Fax: (832) 413-5405
**_Attorneys for Plaintiff Elusive Wildlife Technologies, LP_**